**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **GENERAL ELECTRIC CAPITAL CORPORATION,** | ) ) ) | |
| **Plaintiff,** | ) ) | 8:07CV425 |
| vs. | ) ) ) | **MEMORANDUM AND ORDER** |
| **MELVIN E McKERN and TRACY K. REEVES,** | ) ) ) | |
| **Defendants.** | ) | |

This matter is before the magistrate judge by consent of the parties on the Motion for Summary Judgment [17] filed by plaintiff, General Electric Capital Corporation ("GE Capital"). The court finds that the motion should be granted as to the principal amount claimed but will require the plaintiff to submit further information on its request for prejudgment interest.

## JURISDICTION

The court has diversity jurisdiction under 28 U.S.C. § 1332, because the plaintiff is a Delaware corporation with its principal place of business in Stamford, Connecticut, the individual defendants reside in the State of Iowa, and the amount in controversy exceeds $75,000.

## FINDINGS OF FACT[1]

The court finds that the following facts are uncontroverted for purposes of this Motion for Summary Judgment.

---

[1] The briefing schedule expired on February 12, 2008, and the defendants did not respond to this motion. Under NECivR 56.1(b)(1), "[p]roperly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." Although the defendants did not respond, failure to file an opposing brief alone "shall not be considered to be a confession of the motion." NECivR 56.1(b)(2). Nothing in the local rule, however, excuses a party opposing a motion for summary judgment from meeting the party's burden under Rule 56 of the Federal Rules of Civil Procedure. *Id.*

The defendants are officers and directors of Point to Point Express, Inc., Point to Point Logistics, Inc., and Tra-Mel Leasing Corporation (together, the "Debtor Corporations"). The Debtor Corporations are all Nebraska corporations.

On or about April 16, 2004, Point to Point Express, Inc., and CitiCapital Commercial Corporation ("CitiCapital") executed an Accounts Financing, Servicing and Security Agreement whereby Point to Point Express, Inc. assigned all of its accounts receivables ("Receivables") to CitiCapital in exchange for advances against those receivables ("Finance Agreement").

On or about May 31, 2006, Plaintiff GE Capital and Point to Point Express, Inc. executed an "Amendment Two to the Account Financing, Servicing and Security Agreement" whereby GE Capital, as successor in interest to CitiCapital, became the owner of the Receivables subject to a right to recover against Point to Point Express, Inc. if they were uncollectible.

To secure payment of the indebtedness under the Finance Agreement with Point to Point Express, Inc. Defendants McKern and Reeves executed Continuing Guarantees under which they absolutely and unconditionally agreed to repay all monies owed by Point to Point Express, Inc. to GE Capital.

On or about October 17, 2005, Point to Point Logistics, Inc. and GE Capital executed an Accounts Financing, Servicing and Security Agreement whereby Point to Point assigned all of its accounts receivables to GE Capital in exchange for advances against those receivables ("Finance Agreement"). Thereafter, GE Capital became the owner of those receivables subject to a right to recover against Point to Point Logistics, Inc. if they were uncollectible.

To secure payment of the indebtedness under the Finance Agreement with Point to Point Logistics, Inc., the defendants executed Continuing Guarantees under which they absolutely and unconditionally agreed to repay all monies owed by Point to Point Logistics, Inc. to GE Capital.

On or about August 30, 2004, Tra-Mel Leasing Corporation and CitiCapital Commercial Corporation ("CitiCapital") executed an Accounts Financing, Servicing and Security Agreement whereby Tra-Mel Leasing Corporation assigned all of its accounts receivables ("Receivables") to CitiCapital in exchange for advances against those receivables ("Finance Agreement").

On or about May 31, 2006, Plaintiff GE Capital and Tra-Mel Leasing Corporation executed an "Amendment Two to the Account Financing, Servicing and Security Agreement" whereby GE Capital, as successor in interest to CitiCapital, became the owner of the Receivables subject to a right to recover against Tra-Mel Leasing Corporation if they were uncollectible.

To secure payment of the indebtedness under the Finance Agreement with Tra-Mel Leasing Corporation Defendants McKern and Reeves executed Continuing Guarantees under which they absolutely and unconditionally agreed to repay all monies owed by Tra-Mel Leasing Corporation to GE Capital.

As of January 7, 2008, the loan balances (representing the amount of money advanced for which GE Capital has not received payment) for each of these entities were as follows:

| | |
|---|---:|
| Point to Point Express, Inc. | $182,087.28 |
| Point to Point Logistics, Inc. | 25,883.99 |
| Tra-Mel Leasing Corporation | 158,093.91 |
| Sub-total | $366,065.18 |
| Funds collected (8/9/07 to date) | 4,700.43 |
| TOTAL AMOUNT OWED | $361,364.75 |

Defendants have failed and refused to pay these amounts due despite demand therefore.

## CONCLUSIONS OF LAW

Under Fed. R. Civ. P. 56(c) (1987), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "To be a genuine issue of fact, the evidence must be such 'that a reasonable jury could return a verdict for the nonmoving party.'" *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, 1094 (8th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "To be a material fact, the factual issue must potentially 'affect the outcome of the suit under the governing law.'" *Id.* "'Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In their Answers (Docs. 12 & 13), the defendants did not deny executing the personal guarantees, which were attached to the Complaint. The existence and content of the guarantee agreements are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6)(2007). In their answers, the defendants generally disputed the amounts alleged due under the various contracts; however, they have not filed any evidence in opposition to the plaintiff's calculation of the amounts due.

Based on the uncontroverted facts of record, i.e., the evidentiary Affidavit of Jeffrey Ferguson, the court finds that the defendants are in breach of the Continuing Guarantees they

executed on behalf of the Debtor Corporations and are jointly and severally liable to the plaintiff in the principal amount of $368,817.19.

The court has been unable to evaluate with any assurance the plaintiff's request for an award of interest at a rate of 8.75% per annum from and after January 7, 2008.  The Affidavit of Jeffrey Ferguson was signed on January 7, 2008, but is silent as to the applicable interest rate.

The three contracts (which state that they are governed by the law of the State of Minnesota) contemplate the payment of interest to GE Capital monthly, as of the last day of each calendar month, at a rate equal to the lesser of the lawful maximum rate or a rate based on the highest of the Prime Rates published in the Money Rates section of *The Wall Street Journal* as the base rate on corporate loans.  The documents included in Exhibit I (Doc. 21-11) reference interest rates ranging from 9% to 9.75%.

For these reasons, the court will require the plaintiff to submit a supplemental brief and evidence index showing how the 8.75% figure was derived and verifying that an award of interest at a rate of 8.75% per annum from and after January 7, 2008 is permissible under the law of the State of Minnesota.

**ORDER**

**IT IS ORDERED** that plaintiff's Motion for Summary Judgment [17] is granted, in part, as follows:

1.  The motion is granted in favor of the plaintiff and against the defendants, jointly and severally, in the principal amount of $368,817.19.

      2.    Plaintiff's request for interest at the rate of 8.75% per annum from and after January 7, 2008 is held in abeyance. Plaintiff is given until and including **March 20, 2008** to file a supplemental brief and evidence index showing substantiating the 8.75% figure and verifying that the requested award is permissible under the law of the State of Minnesota. Defendants are given until the close of business on **March 31, 2008** to respond to plaintiff's supplemental brief and evidence.

      3.    This Memorandum and Order does not constitute a final judgment.

**DATED March 3, 2008.**

                                      **BY THE COURT:**

                                      **s/ F.A. Gossett**
                                      **United States Magistrate Judge**